UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

**ERNEST ANCKER**                                                    **CIVIL ACTION**

**VERSUS**                                                                      **NO. 05-1933**

**U.S. VETERANS ADMINISTRATION**                     **SECTION: "C"**

ORDER AND REASONS

Before the Court is a Motion to Limit the Ad Damnum filed by the United States of America ("USA") (Rec. Doc. 22). The plaintiff, Ernest Ancker ("Ancker") opposes the motion. The motion is before the Court on the briefs, without oral argument. Having considered the memoranda of counsel, the arguments and the applicable law, the Court finds that the Motion to Limit the Ad Damnum is **DENIED**.

**I. BACKGROUND**

Ancker is a veteran of the Viet Nam war who lives in Chicago, Illinois. On May 28, 2003, while he was visiting New Orleans, Louisiana, he was admitted to the New Orleans V.A. Medical Center ("VAMC") for chest pains and shortness of breath. The doctors later determined that Ancker had pneumonia and had suffered an acute myocardial infarction, i.e. heart attack. He required artery bypass surgery for his heart condition. The surgery was performed on June 11, 2003.

After his surgery, Ancker had problems with decubitus ulcers to his heels, which did not heal.  On September 18, 2003, the Dr. Michael Papas, the Chief of Vascular Surgery at the VAMC examined Ancker's ulcers.  He noted the absence of a femoral pulse in the left leg and arranged for a diagnostic angiogram to see if any revascularization procedure was possible.  This procedure was scheduled for September 23, 2003.  However, Ancker canceled this appointment and never rescheduled.

Then on April 1, 2004 Ancker had a consultation with a physician at the VMAC.  The doctor reported that the right heel ulcer had healed and that the one on the left heel had significantly decreased in size.  Further improvement was also noted by a vascular surgeon at the VMAC on April 29, 2004.  A few more medical reports from May of 2004 confirm that Ancker's condition remained the same for the next month.

Ancker filed his Administrative Tort Claim ("ATC") with the Veterans Administration ("VA") on June 2, 2004.  In his claim he stated that he had developed severe heel ulcers while in the VMAC and that the hospital staff did not take any preventative measures.  He claimed that he had severe pain and trouble walking.  He stated that his damages were $100,000.

After Ancker filed his ATC, his condition worsened.  The ulcer on his left heel became larger and began to excrete blood clots.  He acquired a bone infection and his left leg was amputated below the knee on September 3, 2004.  A few weeks later, on October 15, 2004, the amputation was revised and Ancker's leg was amputated above the knee.

In light of the changes in his condition, Ancker sent another letter to the VA.  In these letters, he informed them of the changes in his condition.  However, he never prayed for a specific amount over $100,000.

Ancker filed this claim on May 24, 2005.  He stated that six months had passed since he filed his ATC with the VA and that no action had been taken.  He seeks damages for medical expenses, physical and mental pain and suffering, loss of enjoyment of life, loss of earning capacity and loss of consortium.  The USA filed this motion seeking to limit Ancker's damages to $100,000, because that is the only sum he ever provided to the VA for his ATC.

**II.  ANALYSIS**

The FTCA is a waiver of sovereign immunity that must be strictly construed.  See, *United States v. Sherwood*, 312 U.S. 584, 590-91, 61 S.Ct. 767, 85 L.Ed. 1058 (1941).  Congress, in granting a waiver of sovereign immunity, may define the exact conditions of such waiver.  See, *Honda v. Clark*, 386 U.S. 484, 501, 87 S.Ct. 1188, 18 L.Ed.2d 244 (1967).  Under the FTCA a party has two years within which to file a claim for a tort against the federal government.  However, the USA's consent to be sued in tort under the FTCA is limited.  One such limitation is that the plaintiff must first exhaust his administrative remedies.  Specifically, 28 U.S.C. § 2675(a) provides that an action shall not be instituted upon a claim against the USA for money damage unless the claimant has first presented the claim to the appropriate federal agency and his claim has been finally denied by the agency in writing and sent to him by registered mail.  The failure of an agency to make a final disposition of a claim within six months after it is filed shall be deemed a final denial of the claim.  See, 28 U.S.C. § 2675(a) (2006).  Making a claim to a federal agency in writing includes providing written notice of a "sum certain."  28 U.S.C. § 2672 and 28 C.F.R. § 14.2(a).

Another condition of this waiver of sovereign immunity is that a party's recovery is

limited to the amount he sought in the administrative proceeding. Section 2675(b) of Title 28 of the United States Code says that:

> Action[s] under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts relating to the amount of the claim.

Thus, according to the statute, the plaintiff bears the burden for increasing the amount of damages in his federal court case over the amount prayed for in his administrative claim by proving intervening facts or newly discovered evidence. *Dickson v. United States,* 545 F.2d 886, 893 (5th Cir. 1977).

The Fifth Circuit interprets this statute as a two part inquiry. First, "the evidence must support the increase in the prayer over [the amount requested in] the administrative claim." *Dickerson v. United States*, 280 F.3d 470, 475 (5th Cir. 2002). Second, "the allegedly newly discovered evidence or intervening facts must not have been reasonably capable of detection at the time the administrative claim was filed." *Id.*

This test is both subjective and objective. The first question is a subjective one which asks whether the specific injuries for which claims are made in the federal court lawsuit were known at the time that the administrative claim was made. *Scallan v. United States*, 2004 WL 102500, *5 (E.D.La.). The second part of the test is objective. It inquires whether the plaintiff could have determined his worst-case scenario based on the severity of his injuries that were known at the time he filed his administrative claim. *Id.*

The "new evidence" must be new information which materially differs from the worst-case scenario of which the claimant knew or could reasonable have known when he filed his

administrative claim. *Low v. United States*, 766 F.2d 478, 481 (5th Cir. 1986). Requiring the plaintiff to plan for the worst-case scenario in filing his administrative claim, puts the government on notice of its maximum potential liability in FTCA cases. *Id.* at 470-71. Thus, the policy encourages settlement of FTCA cases in accordance with the statute's purpose. *Id.*

Here, the USA argues that Ancker's claims should be limited to $100,000. According to the USA, this is the only "sum certain" that Ancker ever provided to the VA in his ATC. Furthermore, the USA asserts that Ancker cannot meet the Fifth Circuit's test to recover damages beyond what he prayed for in his ATC. Specifically, the USA claims that since his amputation, Ancker submitted two additional letters to the VA and that neither one increased the "sum certain." In fact, one said that his damages were $100,000 "for his pain and suffering for his ulcer and the loss of his foot." Thus, the USA argues that the amputation is not newly discovered evidence or an intervening event which justifies an increase in damages over the "sum certain."

Ancker disagrees. He claims that the first post-amputation letter to the VA should have read that the $100,000 was "for his pain and suffering, for his ulcer and **not** for the loss of his foot." He also asserts that in that same letter he said that "damages in the amount needed to compensate [him] for the loss of his leg are appropriate." Furthermore, Ancker claims that a plaintiff does not have an obligation to amend his ATC if his injuries increase after filing the claim. Finally, he argues that, when he filed his ATC, the doctors had reported that his heel was nearly healed and he could not have anticipated at that time that his leg would be amputated.

At the time Ancker filed his claim he did not actually know that his leg would be amputated. Therefore, he passes the first part of the test. Thus, the Court must consider whether

he could have determined that amputation would be necessary at the time he filed his claim.

Just before Ancker filed his claim with the VA, the doctors had told him that his foot was healing. Ancker's medical records show that the ulcer was shrinking. Even the vascular surgeon at the VMAC found this to be so. See Rec. Doc. 25. It does not appear that the doctors anticipated that amputation would be necessary. The courts have allowed an increase of damages over the administratively claimed amount when, at the time the claim was filed, the claimant did not know and could not have ascertained that an injury would not heal without surgery. *Low*, 795 F.2d at 460 (citing *United States v. Alexander*, 238 F.2d 314, 317-18 (5th Cir. 1956)). This evidence tends to show that Ancker could not have known that amputation would be necessary at the time he filed his ATC. Thus, he passes the second part of the test and the ad damnum should not be limited.

However, the USA contends that Ancker should have later supplemented is claim to change the sum certain. The USA says that because Ancker never affirmatively changed the "sum certain" in either of his two post-amputation letters to the VA, that he should now be precluded from recovering damages in excess of $100,000. Ancker, on the other hand, asserts that there is no claim supplementation requirement and that the two post-amputation letters were simply to inform the VA of the additional injuries, i.e. the amputations.

The Court agrees with Ancker that there is no claim supplementation requirement. Under 28 C.F.R. § 14.2(4)(c), a claim ***may*** be amended prior to final disposition by the agency. However, it does not have to be amended. Furthermore, the Court finds that Ancker's post amputation letters put the government on notice that he would be claiming more damages. The line of the first post-amputation letter that reads, "damages in the amount needed to compensate

[him] for the loss of his leg are appropriate," makes up for the ambiguity in the line regarding what the damages claimed covers.

### III. CONCLUSION

For the reasons stated above,

IT IS ORDERED that the USA's Motion to Limit the Ad Damnum is **DENIED**.

New Orleans, Louisiana this 28th day of November, 2006.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE